# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ZURICH SERVICES CORPORATION,**

      **Plaintiff,**

**v.**                                          **Case No.: 8:13-cv-1896-T-30AAS**

**PROFESSIONAL MANAGEMENT
SERVICES GROUP INC., STAFFING
CONCEPTS NATIONAL, INC., and
EXECUTIVE MANAGEMENT GROUP,
INC.,**

      **Defendants.**

_____/

## REPORT AND RECOMENDATION

Before the Court are Plaintiff Zurich Services Corporation's ("Plaintiff's") **Dispositive Motion for Partial Summary Judgment and Memorandum of Law in Support** (Doc. 105)[1] and Defendants Professional Management Services Group, Inc. f/k/a PEO Management Group, Inc., Staffing Concepts National, Inc., and Executive Management Group, Inc.'s ("Defendants'") **Response in Opposition to Plaintiff's Dispositive Motion for Partial Summary Judgment** (Doc. 117).  Also before the Court are the following supplemental filings: **Defendants' Notice of Filing Exhibits to Benjamin Anthony Foley's Declaration in Opposition to Plaintiff's Dispositive Motion for Partial Summary Judgment**[2] (Doc. 125), Plaintiff's **ZSC's**

---

[1] The district judge referred this matter to the undersigned for consideration and a Report and Recommendation.  *See* Local Rule 6.01(a), M.D. Fla.

[2] Plaintiff contends the Court should disregard the Administrative Services Agreement filed as Exhibit 2 to this notice, asserting that it was not produced in discovery. (Doc. 125 Ex. 2; Doc. 126 at 3). Defendants do not explain why the Administrative Services Agreement was not produced in discovery pursuant to Rule 26(a), Fed. R. Civ. P., and have therefore not demonstrated that the failure to produce it was substantially justified or harmless. *See* Fed. R. Civ. P. 37(c).  Accordingly,

**Supplemental Brief in Support of Motion for Partial Summary Judgment** (Doc. 126), **Defendants' Preliminary Supplemental Brief in Opposition to Plaintiff's Dispositive Motion for Partial Summary Judgment** (Doc. 129), and **Defendants' Amended Supplemental Brief in Opposition to Plaintiff's Dispositive Motion for Partial Summary Judgment**[3] (Doc. 131) and Exhibits thereto (Docs. 132, 133).  It is **RECOMMENDED** that the motion be **granted in part and denied in part**.

I.    **Procedural Background**

On July 23, 2013, Plaintiff filed a claim for breach of contract against Defendant Professional Management Services Group, Inc. ("Defendant PMSG"), alleging that Defendant PMSG failed to pay amounts due under the parties' Claim Services Contract. (Doc. 1).  Defendant PMSG ceased business operations by January 2014. (Doc. 105 Ex. 4 at 10).  In April 2014, the Court granted summary judgment in Plaintiff's favor, awarding damages in the amount alleged, plus prejudgment interest. (Doc. 32).  Judgment was entered against Defendant PMSG on April 18, 2014. (Doc. 33).  Final judgment on attorney's fees was entered against Defendant PMSG on May 29, 2014. (Doc. 49).

Around May 2014, Defendant PMSG paid $150,000 to Executive Management, Inc.

---

the Court will disregard the Administrative Services Agreement. (Doc. 125 Ex. 2).  Additionally, the Court notes that Defendants' lack of timely compliance with the case management deadlines and other Court orders has caused substantial delay.  However, the Court declines to disregard Defendants' other exhibits (Docs. 125 Exs. 1, 3) on that ground, and prefers, instead, to consider Plaintiff's Dispositive Motion for Partial Summary Judgment and Defendants' Response on the merits and the evidence presented.

[3] As Defendants filed an Amended Supplemental Brief (Doc. 131), the Court disregards the Preliminary Supplemental Brief (Doc. 129).

("Defendant Executive"). (Docs. 83 at 4, 86 at 2, 105 Ex. 5[4] at 34-36).  In November 2014, Defendant PMSG assigned its interest in five (5) notes to Staffing Concepts National, Inc. ("Defendant SCN"). (Doc. 105 Ex. 12 at 21).  As of June 2014, at least $1.68 million remained due and owing on the notes. (Doc. 105 Ex. 4 at 34-35).  Henry C. Hardin, III, who owns Defendant PMSG, also has ownership interests in Defendants Executive and SCN. (Docs. 105 Ex. 3 at 15, Ex. 6 at 7, 10)

On May 4, 2015, Plaintiff commenced proceedings supplementary against Defendant PMSG and impleaded Defendants SCN and Executive. (Docs. 80, 82, 83).  Plaintiff stated that the full amount of the judgment, $636,031.10, remained due and owing at the time it filed its Supplemental Complaint. (Doc. 83 at 3).[5]  In its four-count Supplemental Complaint,[6] Plaintiff seeks to avoid as fraudulent Defendant PMSG's payment of $150,000 to Defendant Executive and assignment of notes to Defendant SCN, to the extent necessary to satisfy the outstanding judgment. Plaintiff now moves for summary judgment as to Counts I, II, and III of its Supplemental

---

[4] For purposes of clarity, the exhibit numbers and page numbers referenced by the Court correspond to the exhibit numbers and page numbers assigned to the documents by the electronic filing system, not the exhibit numbers or page numbers assigned by the parties.

[5] However, in the instant motion for partial summary judgment, Plaintiff states that there is currently $511,031.00 outstanding on the judgment. (Doc. 105 at 1).

[6] Count I of Plaintiff's Supplemental Complaint alleges Defendant PMSG's payment of $150,000 to Defendant Executive violates the Florida Uniform Fraudulent Transfer Act, ("FUFTA"), Section 726.105(1)(a), Fla. Stat. (Doc. 83 at 6-8).  Count II alleges Defendant PMSG's payment of $150,000 to Defendant Executive violates Section 726.106(2), Fla. Stat. (*Id.* at 8-9).  Count III alleges Defendant PMSG's note transfers violate Section 726.105(1)(a), Fla. Stat. (*Id.* at 9-10). Count IV alleges Defendant PMSG's note transfers violate Section 726.106(2), Fla. Stat. (*Id.* at 11-12).

Complaint.[7]

Significant procedural history has occurred since the time Plaintiff's Dispositive Motion for Partial Summary Judgment (Doc. 105) became ripe for the Court's review upon Defendants' filing of a Response (Doc. 117). On August 18, 2016, Plaintiff filed a Motion to Strike Declaration of Benjamin Anthony Foley (Doc. 118), noting that the documents Defendants stated were attached to the declaration were not, in fact, filed. The Court denied the motion without prejudice and required Defendants to file the missing documents. (Doc. 119). When Defendants failed timely to file the documents, Plaintiff renewed its motion to strike. (Doc. 120). The Court held a hearing on the matter, ultimately denied the renewed motion to strike, set a new deadline for Defendants to file the missing documents and any other independent evidence to bolster the statements made by Mr. Foley in his declaration, and permitted the parties to file supplemental briefing on the issue of the factual support underlying Mr. Foley's declaration and whether the "sham affidavit"[8] rule should apply. (Doc. 123). The parties filed supplemental briefs (Docs. 126, 129, 131), and the Court finally is able to consider the parties' arguments and the evidence presented.

## II.     Summary Judgment Standard

The Court shall grant a motion for summary judgment only if, based on the record (including, but not limited to, depositions, affidavits or declarations, documents, electronically stored information, stipulations, admissions, and interrogatory answers), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[7] Plaintiff states that, "In the event that the Court grants summary judgment to [Plaintiff] on each of these Counts, the remaining Count IV would be superfluous." (Doc. 105 at 17 n.2).

[8] For Purposes of this order, the terms "affidavit" and "declaration" are used interchangeably.

matter of law." Fed. R. Civ. P. 56(a), (c).  "The movant 'bears the initial responsibility of informing the district court of the basis for its motion' by identifying those portions of the record that demonstrate the absence of genuine issues of material fact." *Baldwin County, Ala. v. Purcell Corp.*, 971 F.2d 1558, 1563 (11th Cir. 1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant satisfies their initial responsibility, the burden shifts to the nonmoving party to rebut the movant's showing with sufficient evidence. *Id.*

However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

In undertaking the summary judgment analysis, the Court views the evidence in light of the non-moving party and draws all justifiable inferences in its favor. *Id.* at 255.

## III.   Discussion

### A.      Application of the "Sham Affidavit" Rule

As a preliminary matter, the Court must address Plaintiff's argument that Mr. Foley's declaration, attached to Defendant's Response in Opposition to Plaintiff's Dispositive Motion for Partial Summary Judgment (Doc. 117, Ex. 1), should be disregarded as a sham.

In the Eleventh Circuit, "[a] court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010).  "'If a party who has been examined at length on deposition could raise an issue of fact

5

simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (quoting *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).

A court may only disregard an affidavit as a sham "'"when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . .[and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.'" *Id.* at 954 (alteration in original) (quoting *Van T. Junkins & Assocs. v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984)). Because of the harsh effect of such a rule, courts should apply the sham affidavit rule sparingly and must find an inherent inconsistency between a deposition and an affidavit before the court may disregard the affidavit. *Latimer*, 601 F.3d at 1237. When there is no inherent inconsistency, conflicts between the deposition testimony and the affidavit at issue "present questions of credibility which require jury resolution." *Lane v. Celotex Corp.*, 782 F.2d 1526, 1533 (11th Cir. 1986).

In this case, the Court disregards Mr. Foley's declaration as a sham. The Court finds most striking how Mr. Foley's clear deposition testimony that Defendant PMSG had no employees on the payroll in the first week of January 2014, other than one on severance pay (Doc. 105 Ex. 5 at 36), is contradicted by statements in his declaration that Defendant PMSG had up to twenty employees on staff after December 31, 2013 (Doc. 117 Ex. 1 at 4 ¶ 7). It is true that Mr. Foley's declaration states that Defendant PMSG "remained responsible for following through on all work related to services for the Old-PEOs'[9] coverage through December 31, 2013," (*id.* at 3 ¶4), and

---

[9] PEO stands for professional employer organization. *See infra* page 9.

that Defendant PMSG "was supported by personnel from the New-PEOs for this major undertaking" (*id.* ¶ 5).   However, Mr. Foley specifically states in his declaration that "approximately 18-20 people were staffing [Defendant PMSG's] operations in the Building through January and February 2014." (Doc. 117 Ex. 1 at 4 ¶ 7).   The Court finds an inherent inconsistency between that statement and his previous deposition testimony that Defendant PMSG had no employees as of the first week of January 2014, particularly as Defendants have not provided sufficient evidence to support Mr. Foley's inconsistent declaration statement. (*See, e.g.*, *Bushell v. Wackenhut Int'l, Inc.*, 731 F. Supp. 1574, 1578 (S.D. Fla. 1990) (other evidence lent credence to subsequent affidavit)).[10]

Additionally, the circumstances surrounding the submission of Mr. Foley's declaration create suspicion about the veracity of the declaration.   At the outset, although Defendants were granted two extensions of time (Docs. 109, 112) to respond to Plaintiff's Dispositive Motion for Partial Summary Judgment (Doc. 105), Defendants failed to timely file a response.   Defendants filed their response only after the Court entered a show cause order for failure to respond, giving them a third and final seven (7) day extension. (Docs. 116, 117).

Once filed, Defendants' five (5) page response attaching Mr. Foley's declaration contained one vague reference to unidentified documents "listed in Schedule A," (Doc. 117 Ex. 1 at 6), rather than containing point by point citations to evidence supporting the assertions made in the declaration.   The referenced "Schedule A" was never filed, contrary to this Court's order. (Doc.

---

[10] In connection with Defendants' Amended Supplemental Brief (Doc. 131), Defendants provided exemplars of work produced by Defendant PMSG in 2014. (Doc. 133 Ex. 1).   While the exhibit filed contains, among other things, emails between individuals from different companies, the emails do not clarify the relationship between the individuals, the companies, and Defendant PMSG.

119).  After a hearing on the matter, Defendants were given a final opportunity to file the missing Schedule A and any other independent evidence in support of the declaration. (Doc. 123 at 2). Once again, Defendants did not file the missing Schedule A and filed only three other documents in support of the declaration (Doc. 125 Exs. 1-3), without explanation as to how the documents support Mr. Foley's declaration.[11]  Defendants then filed three (3) more exhibits in connection with Defendants Amended Supplemental Brief. (Docs. 131, 132, 133).

Moreover, as Plaintiff contends, Mr. Foley's statement in his declaration that Defendant PMSG was responsible for winding down its business (Doc. 117 Ex. 1 at 3 ¶ 4-5) is inconsistent with clear statements made by Mr. Foley in a deposition in another case that SC Consulting Services (a company owned jointly by Mr. Foley and Henry Hardin) was retained to perform the wind-down for Defendants PMSG. (Doc. 126 Ex. 2 at 11, 28, 29, 30).  The Court finds this highly suspicious.  On its own, the inconsistency with testimony from another proceeding does not provide sufficient reason to disregard Mr. Foley's declaration in this case as a sham. *See Reese v. Herbert*, 527 F.3d 1253, 1270 n.28 (11th Cir. 2008) ("[W]e would be reluctant to disregard an affidavit of a witness, whether or not a party in the case, on the ground that it is inconsistent with testimony the witness gave in another proceeding.").  However, when viewed in conjunction with the other inconsistent statement and circumstances described, this inconsistency further justifies the Court's determination to disregard Mr. Foley's declaration as a sham.[12]

---

[11] And, as Plaintiff points out, Defendants improperly failed to disclose one of those documents (Doc. 125 Ex. 2) in discovery. *See* supra n.2.

[12] Plaintiff also contends that Mr. Foley's deposition testimony that the $150,000 payment from Defendant PMSG to Defendant Executive was for rent due for January through April 2014 (Doc. 105 Ex. 4 at 19) is inconsistent with Defendants' assertion that the $150,000 payment includes rent for months following April 2014.  Plaintiff argues that these assertions contradict each other, showing Mr. Foley's declaration is a sham.  However, this argument is unavailing.  While the

Accordingly, due to the inherent inconsistency described above, along with the consistent and considerable delay, the suspicious circumstances surrounding Mr. Foley's declaration, and the other inconsistencies noted, the Court disregards Mr. Foley's declaration as a sham.

**B.     Florida Statute § 726.105(1)(a), Counts I & III**

Counts I and III of the Supplemental Complaint allege that Defendant PMSG's payment of $150,000 to Defendant Executive and five (5) notes to Defendant SCN are fraudulent transfers pursuant to Section 726.105(1)(a) of the FUFTA.  Section 726.105(1)(a) of the FUFTA provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (a) With actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Section 726.105(1)(a), Fla. Stat.  As to each transfer, Plaintiff must establish three elements to prevail on its Section 726.105(1)(a) claim: (1) Plaintiff was a creditor; (2) Defendants intended to commit the fraud; and (3) "the fraud involved a conveyance of property that could have been applicable to the payment of the debt due." *Dillon v. Axxsys Int'l, Inc.*, 185 F. App'x 823, 828-29 (11th Cir. 2006) (per curiam) (unpublished) (citing *Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So. 2d 1227, 1229 (Fla. 4th DCA 2002)).

As to the second element, the FUFTA identifies several factors, known as badges of fraud, to consider in determining "whether the circumstantial evidence supports . . . an inference of

---

Court recognizes that one purpose of Mr. Foley's declaration was to provide support for Defendants' assertion that the $150,000 payment includes rent for months following April 2014, Plaintiff does not identify any particular language in Mr. Foley's declaration that actually conflicts with his testimony that the $150,000 payment was for rent for January through April 2014.  In his declaration, Mr. Foley describes Defendant PMSG's activities and continued occupancy of the premises through the date of his declaration, August 1, 2016, but does not discuss the $150,000 payment at issue.

intent." *In re Toy King Distribs., Inc.*, 256 B.R. 1, 128 (Bankr. M.D. Fla. 2000).  The factors to be considered are whether:

(a)   The transfer or obligation was to an insider.

(b)   The debtor retained possession or control of the property transferred after the transfer.

(c)   The transfer or obligation was disclosed or concealed.

(d)   Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e)   The transfer was of substantially all the debtor's assets.

(f)   The debtor absconded.

(g)   The debtor removed or concealed assets.

(h)   The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i)   The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j)   The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k)   The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Fla. Stat. § 726.105(2).  Summary judgment is proper when the moving party demonstrates the presence of these factors, "if no other evidence is proffered to plausibly suggest another explanation for the transfer." *German Am. Capital Corp. v. Morehouse*, No. 13-80704-CIV, 2014 WL 2511307, at *2 (S.D. Fla. June 4, 2014).

Notwithstanding the presence of badges of fraud, the FUFTA identifies several defenses that, if satisfied, provide that the transfer is not voidable. *See* Fla. Stat. § 726.109.  As to Section 726.105(1)(a), a transfer is not voidable "against a person who took in good faith and for a reasonably equivalent value." Fla. Stat. § 726.109(1).

1.   Count I: $150,000 Payment to Defendant Executive

(a)   *The Existence of an Asset and the Occurrence of a Transfer*

Section 726.105(1)(a) of the FUFTA requires the existence of a "transfer," within the

meaning of the statute.  Defendants contend that a transfer, within meaning of the FUFTA, never occurred.

Defendants' argument is untimely.  Defendants did not assert the absence of a transfer in their response to Plaintiff's motion for partial summary judgment. (Doc. 117).  Instead, Defendants raised this argument in Defendants' Amended Supplemental Brief. (Doc. 131 at 2-5).  While the Court permitted the parties to file supplemental argument and authority, the Court limited the parties' briefing to "the issue of the factual support underlying Benjamin Anthony Foley's Declaration (Doc. 117 Ex. 1) and whether the 'sham affidavit' rule should apply." (Doc. 123 at 2). Defendants' new assertion that a transfer did not occur extends well beyond the scope of supplemental briefing permitted by the Court.

However, as explained further herein, Defendants' new argument is the only argument on which Defendants can survive summary judgment.  Given the Court's desire to determine Plaintiff's motion for partial summary judgment on the merits, rather than on a technical failure, the Court will consider Defendants' untimely argument.

Pursuant to the FUFTA, "'[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Fla. Stat. § 726.102(14).  The FUFTA defines an "asset" as "property of a debtor." Fla. Stat. § 726.102(2).

Unfortunately, Plaintiff does not address whether a transfer occurred, apparently presuming that it did.  Plaintiff merely cites Mr. Foley's February 1, 2016 deposition testimony that Defendant PMSG transferred $150,000 to Defendant Executive on April 28, 2014. (Doc. 105 at 3, Ex. 5 at 35).

11

Also citing Mr. Foley's deposition testimony, along with a report and work papers from the last audit of Defendant SCN, Defendants contend that funds paid to Defendant Executive did not belong to Defendant PMSG; instead, the funds belonged to the professional employer organizations ("PEOs"), including Defendant SCN, that Defendant PMSG serviced. (Doc. 105 Ex. 4 at 7, 13, 24, 26; Doc. 125 Ex. 1 at 13; Doc. 132 Ex. 1).  Defendants explain that although Defendant SCN and another entity, HR Shared Services, Inc., sold their client service agreements to Cohesive Networks, Inc., and Cohesive Networks 2, Inc. (Doc. 125 Ex. 3 at 1), effective January 1, 2014,  Defendant SCN remained responsible for work, including costs and expenses, related to operation of the business through the closing date. (Doc. 125 Ex. 3 ¶ (2)(o)(i)).  Defendants argue that because Defendant PMSG held the funds for Defendant SCN, the $150,000 payment from Defendant PMSG to Defendant Executive was not "property of the debtor," but was a payment from Defendant SCN to Defendant Executive for back rent due; therefore, there was no transfer within the meaning of the statute.

The Court notes that Defendants arguably admitted that a transfer occurred in their Answer and Affirmative Defenses to Supplemental Complaint. (Doc. 86).  For example, in response to Plaintiff's allegations that "[Defendant] Executive was a first transferee of the funds," (Doc. 83 ¶ 44, 49), Defendants stated, "Admitted, that the *transfer* was received, otherwise denied." (Doc. 86 ¶ 44, 49 (emphasis added)).  However, Defendants inconsistently refer to the payment as a payment or a transfer.  For example, Plaintiff alleges that "[Plaintiff] obtained its judgment against [Defendant] PMSG on April 18, 2014.  Within the next month, [Defendant] PMSG transferred $150,000 to Executive as a purported payment for back-due rent for January through April 2014." (Doc. 83 ¶ 43).  Defendants responded, "Admitted that the judgment entered on the date alleged, admitted that the *subject payment* was made for past-due rent, otherwise denied." (Doc. 86 ¶ 43

12

(emphasis added)).

The Court is averse to allowing untimeliness and inconsistency to prevail. However, on the current record, viewing the evidence in the light most favorable to the non-moving Defendants, the Court reluctantly concludes that Plaintiff has failed to demonstrate an absence of a genuine issue of material fact regarding the existence of a transfer within the meaning of the FUFTA, and summary judgment is precluded as to Count I.

(b)      *Actual Intent to Hinder, Delay, or Defraud*

Had Plaintiff demonstrated the absence of a genuine issue of material fact regarding the existence of a transfer, summary judgment on Count I would be appropriate, as Plaintiff sufficiently demonstrated that no genuine dispute of material fact exists on the issue of actual intent.

As Plaintiff asserts, badges of fraud are present with respect to Defendant PMSG's $150,000 payment to Defendant Executive. First, Defendant Executive is an insider of Defendant PMSG within the meaning of Fla. Stat. § 726.105(2)(a). The FUFTA defines "insider" to include the term "affiliate." Fla. Stat. § 726.102(8)(d). An "affiliate" is:

> [a] corporation 20 percent or more of whose outstanding voting securities are directly or indirectly, controlled, or held with power to vote, by . . . a person who directly or indirectly owns, controls, or holds, with power to vote, 20 percent or more of the outstanding voting securities of the debtor[.]

Fla. Stat. § 726.102(1)(b). Mr. Hardin owns one-hundred (100) percent of Defendant PMSG and eighty (80) percent of Defendant Executive. (Docs. 105 Ex.3 at 15, Ex. 6 at 10). Defendants do not identify any evidence to the contrary. Therefore, Defendant Executive is an insider of Defendant PMSG. *See* Fla. Stat. § 726.105(2)(a).

Next, it is undisputed that Defendant PMSG paid the funds to Defendant Executive after

Defendant PMSG was sued and that the payment occurred shortly after Defendant PMSG incurred substantial debt.  Plaintiff filed suit against Defendant PMSG on July 23, 2013 (Doc. 1) and judgment was entered against Defendant PMSG on April 18, 2014 (Doc. 33).  In late April or early May 2014, Defendant PMSG made the payment to Defendant Executive. (Docs. 83 at 4, 86 at 2, 105 Ex. 5 at 34-36).  Therefore, two more badges of fraud are satisfied. *See* Fla. Stat. §§ 726.105(2)(d),(j).

Additionally, Plaintiff alleges that another badge of fraud is satisfied because the $150,000 payment from Defendant PMSG to Defendant Executive was one of several payments that disposed of substantially all of Defendant PMSG's assets. *See* Fla. Stat. § 726.105(2)(e).  Plaintiff points to the deposition of Benjamin Anthony Foley, corporate representative of Defendant PMSG, who described a variety of payments, including the $150,000 paid to Defendant Executive, that reduced Defendant PMSG's bank account balance from approximately $3.5 million to $20,000 over the course of a few months. (Doc. 105 Ex. 4 at 11-12, 15-17, 19).  Mr. Foley also explained, among other things, that as of the end of 2013, Defendant PMSG had no source of income, and, at the time of the deposition, no assets and some remaining liabilities in the form of vendor invoices and legal fees. (Doc. 105 Ex. 4 at 28, 46-47, 50).  Defendants do not counter this allegation. Accordingly, Plaintiff has demonstrated the presence of another badge of fraud.

Defendants argue that a question of fact remains as to whether Defendant PMSG was insolvent at the time of the payment or became insolvent shortly after the payment was made. *See* Fla. Stat. § 726.105(2)(i).  Pursuant to the FUFTA, "[a] debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Fla. Stat. § 726.103(1). Alternatively, "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." Fla. Stat. § 726.103(2).

14

Plaintiff argues that Defendant PMSG was insolvent and thereby satisfies another badge of fraud. Plaintiff contends that, by June 2014, Defendant PMSG had virtually no cash or assets (Doc. 105 Ex. 4 at 28-29, 46-47, 50) and therefore could not satisfy the judgment. Besides the judgment, Plaintiff does not argue or demonstrate that Defendant PMSG was not paying other debts as they came due. Defendants contend that the judgment should not be considered for the purpose of determining insolvency because the judgment was in bona fide dispute.

As Defendants point out, the FUFTA resulted from the adoption of the Uniform Fraudulent Transfer Act ("UFTA"). Comment 2 to Section 2 of the UFTA explains,

> [i]n determining whether a debtor is paying its debts generally as they become due, the court should look at more than the amount and due dates of the indebtedness. The court should also take into account such factors as the number of the debtor's debts, the proportion of those debts not being paid, the duration of the nonpayment, and the existence of bona fide disputes or other special circumstances alleged to constitute an explanation for the stoppage of payments.

Uniform Fraudulent Transfer Act § 2. Defendants argue that the judgment was the subject of bona fide dispute because Defendant PMSG appealed the judgment, and the appeal was not final until March 2015, almost a year after the judgment was entered. (Docs. 79, 81). Further, Defendants note that the appeal was not the only forum in which Defendant PMSG challenged Plaintiff's claim. Defendants state that Defendant PMSG also filed an action against Zurich American Insurance Company, Inc., a business entity related to Plaintiff, "to enforce [Plaintiff's] obligations with respect to the Collateral Trust funds to be applied to the claims of [Plaintiff]." (Doc. 117 at 3). It was not until March 2015 that that case was stayed and arbitration was compelled. (*Id.*).

However, "[a] claim based on an unstayed judgment is generally not the subject of a bona

fide dispute." *In re Ransome Grp. Inv'rs, LLLP*, 424 B.R. 547, 556 (Bankr. M.D. Fla. 2009).[13] Here, the record does not reflect, and Defendants do not argue, that the judgment was stayed pending appeal. And, regarding Defendant PMSG's action against Zurich American Insurance Company, Inc., Defendants do not provide any identifying details about that action. Nor do Defendants explain how litigation on what appears to be a collateral matter places the judgment at issue in bona fide dispute.

Under these circumstances, Defendants have not sufficiently demonstrated evidence that a genuine and material question of fact exists as to whether Defendant PMSG was paying its debts as they came due at the time of the $150,000 payment and therefore whether Defendant was insolvent at the time of or shortly after the payment.

Defendants also contend that a factual discrepancy exists regarding whether Defendant PMSG received reasonably equivalent value for the $150,000 payment to Defendant Executive. *See* Fla. Stat. § 726.105(2)(h). Although Defendant PMSG purports the payment was for four (4) months of back rent (Doc. 105 Ex. 4 at 19), Plaintiff contends, citing the deposition testimony of Mr. Foley, the corporate representative of Defendant PMSG and minority owner of Defendant Executive, that Defendant PMSG had no need for the office building because Defendant PMSG had no employees during that period. (Doc. 105 Ex. 5 at 36). Plaintiff also points out that another company, People, entered its own lease with Defendant Executive covering the same time period. (Doc. 105 Ex. 4 at 19-20, Doc. 105 Ex. 5 at 33-34). Absent further evidentiary support, Defendants have not sufficiently demonstrated that a genuine and material issue of fact exists on this point.

Similarly, Defendants have also failed to establish that a factual discrepancy exists on the

---

[13] The FUFTA is analogous to fraudulent transfer provisions in the Bankruptcy Code. *See e.g.*, *In re Pearlman*, 515 B.R. 887, 894 (Bankr. M.D. Fla. 2014).

issue of good faith. *See* Fla. Stat. § 726.109(1).  The FUFTA does not define "good faith." *Wiand v. Waxenberg*, 611 F. Supp. 2d 1299, 1319 (M.D. Fla. 2009).  Courts therefore objectively question "whether the transferee had actual knowledge of the debtor's fraudulent purpose or had knowledge of such facts or circumstances as would have induced an ordinarily prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the transferor's fraudulent purpose." *Id.*  As stated, Mr. Hardin owns one-hundred (100) percent of Defendant PMSG and eighty (80) percent of Defendant Executive. (Docs. 105 Ex.3 at 15, Ex. 6 at 10).  As full owner of Defendant PMSG, Mr. Hardin was aware of Plaintiff's judgment against Defendant PMSG. (Doc. 105 Ex. 6 at 47).  Although Defendants state that the $150,000 payment to Defendant Executive was made "in good faith to preserve [Defendant PMSG's] ability to fulfill its contractual and regulatory obligation," (Doc. 117 at 4), Defendants make no argument that Defendant Executive was unaware of Defendant PMSG's financial situation.

Accordingly, Plaintiff sufficiently demonstrated that no genuine issue of material fact exists on the issue of actual intent.  Had Plaintiff satisfied its burden on the issue of whether a "transfer" occurred within meaning of the FUFTA, the undersigned would have recommended summary judgment be granted in Plaintiff's favor as to Count I.

2.     Count III: Note Transfers to Defendant SCN

As an initial matter, it is undisputed that Defendant PMSG's assignments of five (5) notes to Defendant SCN were transfers pursuant to Section 726.105(1)(a), Fla. Stat.  Defendants briefly state in the Amended Supplemental Brief that "[o]f the three counts at issue in Plaintiff's Motion [for Partial Summary Judgment], two are based on FUFTA § 726.105(1)(a), and the other on § 726.106(2).  Both of these sections of FUFTA use identical language to identify the first element of their respective actions: '[a] *transfer* made' . . . [.]" (Doc. 131 at 2 (quoting Fla. Stat. §§

726.105(1)(a), 726.106(2) (emphasis by Defendants)).  However, Defendants provide no further argument or evidence regarding whether the notes at issue were assets of Defendant PMSG such that the assignment of the notes to Defendant SCN constituted a transfer within the meaning of FUFTA.  Therefore, any argument to that effect is waived. *Carmichael v. Kellog, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1283 (11th Cir. 2009) ("Because she has failed to develop the argument or to offer any citation to the record in support of it, we deem the argument waived.").

As with the $150,000 payment from Defendant PMSG to Defendant Executive, badges of fraud are also present with respect to Defendant PMSG's transfer of five (5) notes to Defendant SCN.  As Mr. Hardin is the sole owner of both Defendant PMSG and Defendant SCN (Docs. 105 Ex. 3 at 15, Ex. 6 at 7),[14] Defendant SCN is an insider of Defendant PMSG.  And the notes were assigned in November 2014, which was after Defendant PMSG was sued by Plaintiff and incurred a substantial debt (Plaintiff's judgment). (Docs. 33; 49; 105 Ex. 12 at 21).

Plaintiff further demonstrates that the note assignments were substantially all of Defendant PMSG's assets, pointing to Mr. Hardin's statement that the purpose of the assignments was to "ultimately transfer the real asset of PMSG to SCN[.]" (Doc. 105 Ex. 6 at 167)  Additionally, Defendant PMSG did not receive reasonably equivalent value for the note transfers.  The notes show that Leasing Resources of America 4, Inc., LRA HR Outsourcing, Inc., and LRA Global HR, Inc., were required to make payments to Defendant PMSG (Doc. 105 Ex. 12 at 15-19), and the assignment agreement does not show that Defendant PMSG received any value for the transfers. (Doc. 105 Ex. 12 at 21).  Moreover, Defendant PMSG concealed the assignments.  Although Plaintiff contacted Defendant PMSG in November 2014 regarding seeking writs of garnishment,

---

[14] Defendants do not identify evidence to the contrary.

18

Defendant PMSG assigned the notes, and Plaintiff did not learn of the assignments until the writs of garnishment were answered. (Docs. 66-68; Doc. 83 at 5-6, Ex.6; Doc. 86 at 5; Doc. 105 Ex. 12 at 21).   While Defendants responded to Plaintiff's motion for partial summary judgment, Defendants did not address the assignments of the notes in their response or supplemental brief. Accordingly, these facts are undisputed and Plaintiff has demonstrated the existence of three (3) more badges of fraud.

Plaintiff further alleges that Defendant PMSG was insolvent or became insolvent shortly after the notes were assigned.   Defendants addressed the insolvency badge of fraud raised by Plaintiff with regard to the $150,000 payment, but did not specifically mention their insolvency arguments with regard to Defendant PMSG's assignment of the notes to Defendant SCN.  As stated above, Defendants have not provided sufficient evidence demonstrating that a genuine issue of material fact exists as to whether Defendant PMSG was insolvent at the time of, or became insolvent shortly after, the notes were assigned.  Therefore, the undersigned recommends summary judgment be granted in Plaintiff's favor as to Count III.

### C.   Florida Statute § 726.106(2), Count II

Count II of Plaintiff's Supplemental Complaint alleges that the $150,000 payment from Defendant PMSG to Defendant Executive was a transfer fraudulent as to present creditors pursuant to the FUFTA, Section 726.106(2).  Pursuant to the FUFTA:

> [a] transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

Fla. Stat. § 726.106(2).  As to Section 726.106(2), a transfer is not voidable:

> (a) To the extent the insider gave new value to or for the benefit of

19

the debtor after the transfer was made unless the new value was secured by a valid lien;

(b) If made in the ordinary course of business or financial affairs of the debtor and the insider; or

(c) If made pursuant to a good faith effort to rehabilitate the debtor and the transfer secured present value given for that purpose as well as an antecedent debt of the debtor.

Fla. Stat. § 726.109(6).

### 1.      The Existence of an Asset and the Occurrence of a Transfer

As described above, *supra* subsection III(A)(1), the Court reluctantly concludes that an issue of fact exists as to whether the $150,000 sum at issue was an asset of Defendant PMSG such that Defendant's payment to Defendant Executive constituted a transfer within the meaning of the FUFTA.  Accordingly, summary judgment is precluded as to Count II.

### 2.      Fraudulent Transfer and Voidability, Fla. Stat. §§ 726.106(2), 726.109(6)

Had Plaintiff demonstrated the absence of genuine and material issues of fact regarding the existence of a transfer, the undersigned would have recommended granting summary judgment in Plaintiff's favor on Count II.  Plaintiff has demonstrated that no genuine issue of material fact exists with regard to whether the $150,000 payment from Defendant PMSG to Defendant Executive was fraudulent as to present creditors pursuant to the FUFTA, Section 726.106(2), Fla. Stat., notwithstanding the defenses provided by Section 726.109(6), Fla. Stat.

#### (a)      *Transfer Fraudulent as to Present Creditors*

As previously explained, it is undisputed that Defendant Executive is an insider of Defendant PMSG and that Defendant PMSG's judgment arose before the $150,000 payment.  It is also undisputed that the $150,000 payment was for an antecedent debt, as Defendant purportedly paid the $150,000 at issue to Defendant Executive for overdue rent. (Doc. 105 Ex. 4 at 19).  *See In re Tanner Family, LLC*, 556 F.3d 1194, 1196 (11th Cir. 2009) (explaining that, in the context

20

of Section 547(b) of the Bankruptcy Code, "[a] debt is 'antecedent' to the transfer sought to be avoided under § 547(b) if it is *pre-existing* or is incurred *before* the transfer." (emphasis in original)).  Further, Defendants have not sufficiently demonstrated evidence that a genuine and material question of fact exists as to whether Defendant PMSG was paying its debts as they came due at the time of the $150,000 payment and therefore whether Defendant was insolvent at the time of or shortly after the payment.  Nor have Defendants argued that Defendant Executive was unaware of Defendant PMSG's financial situation.  Therefore, Plaintiff has demonstrated there is no genuine issue of material fact regarding whether the payment was fraudulent as to present creditors.

(b)    <em>Voidability — New Value and Ordinary Course of Business</em>

As to the issue of new value and whether Defendant PMSG paid Defendant Executive in the ordinary course of business, Defendants state that Defendant PMSG continued to occupy the building while performing transition-related responsibilities for the old PEOs and winding down the business of Defendant PMSG.  Defendants, thus, contend that Defendant PMSG received new value (i.e., subsequent months of continued occupancy of the building) for at least a portion of the $150,000 payment, and argue that Defendant PMSG's continued responsibilities demonstrate that the $150,000 payment for rent was paid in the ordinary course of business.

Plaintiff points to evidence that Defendant PMSG had no employees on payroll and argues that Defendant PMSG therefore had no need to continue occupying the building space at issue. (Doc. 105 Ex. 5 at 36).  Plaintiff additionally notes that another company, People, entered its own lease with Defendant Executive covering the same time period. (Doc. 105 Ex. 4 at 19-20, Doc. 105 Ex. 5 at 33-34), and argues that Defendant PMSG's payment to Defendant executive therefore amounted to a double rent payment.

Defendants point to a provision in the Asset Purchase Agreement, which states, "[Defendant SCN] shall continue to be responsible for all costs and expenses attributable to the operation of the Business or the ownership of the Purchased Assets through the Closing Date[.]" (Doc. 125 Ex. 3 ¶ (2)(o)(i)).   Defendants also point to Exhibit B (Doc. 133 Ex. 1), filed in connection with Defendants' amended supplemental brief (Doc. 131 at 5-6).   Among other things, that document states that it "reflects the existence of substantial work product produced in 2014 by [Defendant PMSG]," and that it contains screenshots of tax filings made by Defendant PMSG in 2014 for the prior year. (Doc. 133 Ex. 1 at 1).   While this demonstrates that Defendant SCN retained some responsibility, even after the sale of its client services contracts, it does not demonstrate the space required by Defendant PMSG to perform it.   For that, Defendants cite the declaration of Mr. Foley, which the Court disregards as a sham.

Accordingly, Plaintiff has demonstrated that no genuine issue of material fact exists with regard to Defendants' arguments that Defendant Executive provided new value to or for the benefit of Defendant PMSG and that Defendant PMSG paid the $150,000 sum to Defendant Executive in the ordinary course of business.

## IV.   Conclusion

As explained herein, the Court concludes that Plaintiff has not demonstrated an absence of genuine issues of material fact regarding a single issue—whether a transfer occurred within the meaning of the FUFTA, in relation to the $150,000 payment made from Defendant PMSG to Defendant Executive.  However, Plaintiff has demonstrated an absence of genuine, material factual issues with regard to Defendant PMSG's note transfers to Defendant SCN.

Accordingly and upon consideration, it is **RECOMMENDED** that Plaintiff's Dispositive Motion for Partial Summary Judgment (Doc. 105) be **GRANTED** as to Count III and **DENIED** as to Counts I and II.

**Date:**  October 21, 2016

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  *See* 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge